SETH B. ROBINSON, Appellant, *v.* HERMAN PASSAVANT et al., Respondents.

*Evidence justifying the finding of a referee as to an employment.*

What evidence will justify a referee in holding that a person was not employed by a firm to sell goods, and in such employment entitled to all profits remaining after the payment of the costs thereof, and a commission added, but that before such person was entitled to any of the proceeds, a previously existing indebtedness on his part to the firm should be paid, considered.

APPEAL by the plaintiff, Seth B. Robinson, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the city and county of New York on the 29th day of April, 1892, upon the report of a referee, dismissing the plaintiff's complaint upon the merits, and for costs.

*Charles De Hart Brower*, for the appellant.

*George M. Pinney*, for the respondents.

O'BRIEN, P. J.:

The complaint herein alleges :

" That in the year of 1885 Seth B. Robinson, the father of the plaintiff herein, was engaged in business as an importer in the city of New York, and that in said year, and with the knowledge and consent of defendants, said Robinson purchased for the account of defendants, goods, wares and merchandise of the price and value of about $22,800, exclusive of duties.

" That thereafter the said goods were delivered to and received by the said defendants.

" That thereafter, and on or about the 10th day of September, 1885, the said defendants employed the said Robinson to sell said goods for them, and promised and agreed to pay him for his services in selling the same the excess of the price at which he might sell the same over the costs of the goods so sold, five per cent added thereto.

" That thereupon the said Robinson, pursuant to said employment and in reliance upon the aforesaid promises and agreement, sold a

large amount of the aforesaid goods, to wit, goods of the cost of about $18,000 for the price or sum of about $30,000.

"That thereafter, and on the 14th day of June, 1886, the said Robinson, being then a resident of the city of New York, died intestate, and thereafter the surrogate of the county of New York, having jurisdiction in the premises, duly issued letters of administration upon the goods, chattels and effects of said Seth B. Robinson, deceased, appointing Caroline L. Robinson, his widow, administratrix, who thereupon duly qualified as such administratrix and entered upon the discharge of the duties of her said office.

"That thereafter, and on or about the 13th day of April, 1889, the said Caroline L. Robinson, as administratrix, for value received, duly sold, assigned and set over to this plaintiff all claim which the said Seth B. Robinson had in his lifetime against the defendants on account of or by reason of his said services and employment as aforesaid, and also all claim which she, the said administratrix, had by reason thereof."

The judgment asked is for the sum of $10,000, or the difference between the cost and the price for which such goods were sold.

In determining whether the conclusion reached by the referee was correct, the first question that naturally suggests itself is as to whether the cause of action, as alleged, was proved. The answer to this is to be found in the testimony produced, which, exclusive of extrinsic matters throwing light upon the situation of the parties, the character of their dealings and the nature of the business in which both were engaged, may be briefly summarized.

It appears that Mr. Robinson, Sr., was an importer of buttons; that the defendants were commission merchants, and that in 1885 the former was indebted to the latter in the sum of $18,902.84, which was secured by the deposit with defendants of certain goods. This indebtedness is called "the old indebtedness," and these goods "the old goods." Robinson, Sr., imported goods from Europe through the defendants as commission merchants upon a credit or authority to buy given to him by them, or otherwise upon their guaranty given to houses abroad, and as the result of such credit extended Robinson, Sr., became indebted to defendants for the amount of the old indebtedness, for which he had given what are called the old goods as security.

In the spring of 1885, while thus indebted to defendants, Robinson, Sr., went to Europe with a credit or authority to buy to the extent of $20,000 given to him by defendants upon the firm of Anton Aub & Co. of Paris. Under this credit, and between July 2 and October 13, 1885, Robinson, Sr., purchased goods which were shipped to defendants, the invoice being made in their name, and the payments being by them made to Anton Aub & Co. According to the course of business between the parties, the defendants were to deliver the goods to Robinson after their arrival in New York city, and were to be paid for them by him, all expenses being included, together with five per cent commission as the charge of the defendants for giving to Robinson the credit or authority to buy.

About September 7, 1885, Robinson, Sr., made a general assignment for the benefit of creditors. On October 10, 1885, and before all the new goods had been received, the defendants executed and delivered to Robinson, and to his assignee, a general release. The construction to be given this release, and its effect and bearing upon the rights of the parties, are the crucial questions upon this appeal. At the time this release was delivered the old indebtedness, secured by deposit of certain goods, existed, and the result of the new venture or purchase of the new goods was not ascertained. It is shown that Robinson was desirous of getting possession for purposes of sale of the new goods, and that the defendants refused to give him possession without security, which Robinson was unable to furnish. What occurred between the parties when this arrangement was sought to be effected appears by the testimony of one Ross, who, besides Robinson and Sutton, one of the defendants' firm, was the only person present at the interview. In answer to the question as to what was the conversation between the parties, this witness Ross said:

"It was only a short conversation. Mr. Robinson did not know what to do with the old goods he had on hand unless he got a new stock that came in, and he wanted to know of Mr. Sutton about it, and Mr. Sutton said he could not give them to him unless he gives him some security, and, I think, he suggested the name of Mr. Striker as security, and Mr. Robinson could not give that security, so Mr. Sutton said he could not deliver the goods." "I am talking of the new goods that were just arrived at the time. Then it was

concluded that Mr. Sutton was to sell the goods that were coming in from his store, under the heading of their firm of Passavant & Co." "Under their bill heads, in the store of Passavant & Co., goods that he stored with them." "Mr. Robinson thought at the time that it would not take more than a month or two or three months at the furthest, until he could pay up Mr. Sutton every cent he owed — all the indebtedness would be cleared off and he would get then whatever was remaining, the difference, either in cash or goods, back to his store, and that was the whole agreement at that time."

And in another place this same witness testifies : "Robinson was to have the whole thing ; Passavant & Co.'s indebtedness would have been paid — that was all there was about it ; they wanted to get themselves settled up for the old and the new goods and clear    *    *    *"

It is upon the testimony of this witness that plaintiff's claim is predicated that Robinson, Sr., was to be employed by defendants to sell the new goods and entitled to all the profits remaining after payment of costs, and five per cent commission added ; and an effort was made upon the claim of such an agreement to show that while that was the situation of the parties the release in question was given, which was intended to discharge the old indebtedness in consideration of the retention by defendants of the old goods, thus giving Robinson a claim by way of compensation against defendants for anything that might be realized upon the sale of the new goods over and above what they were to receive under such alleged agreement. The testimony fails to show whether the release was prior or subsequent to this conversation detailed by the witness Ross ; yet the necessity for such proof — the burden of showing which was upon plaintiff — clearly appears when we consider that if it had been shown that the release was subsequent, that would necessarily be the end of plaintiff's case, as showing that the release was not intended merely and solely as a discharge of the old indebtedness.

The weakness, therefore, of appellant's contention appears : *First*, in the failure to prove the allegations of the complaint by showing an employment by the defendants of Robinson, Sr., and, *secondly*, in failing to show that the release was intended as a discharge only

of the old indebtedness.    There is nothing in the case to show that the arrangement with respect to the new goods was any other or different from that which had previously existed between the parties, excepting that Robinson having failed and made an assignment for the benefit of his creditors, the defendants retained possession of the goods, billed them in their own firm name, and received payments upon the sales, to the end that they might be secured to the extent of their advances and the five per cent commission.    We think, therefore, that there was sufficient evidence to justify the referee in finding that the release " was not intended to release the old debt, or the indebtedness growing out of the purchase of the new goods, or any part of either of such debts, or to discharge the security for such debts, or any part of the security for either of such debts; " and that in the absence of any evidence preponderating the other way, such a finding and the judgment ,based thereon should not be disturbed by this court.

Moreover, the conclusion reached by the referee seems the most natural and most consonant with reason and justice.    The defendants were engaged as commission merchants, lending their credit to Robinson, who subsequent to his failure stood in the position towards them of owing about $18,000, which was secured by goods nominally of the value of $19,000 ; and in addition thereto was indebted to them for whatever guaranties they had given to Anton Aub & Co., for the goods purchased between July and October. No good reason is assigned why they should give up their lien upon both the old and the new goods in Robinson's favor ; but, on the contrary, it would seemingly be the natural arrangement between the parties that, after the application of all the security, both old and new goods, which the defendants had to the payment of their indebtedness, whether for the old or new goods, any surplus remaining, under the course of dealing as between the parties, should be turned over to Robinson.    It is conceded by the stipulation of the counsel that the amount of such indebtedness for the old and the new goods exceeded the total credit as the result of the application of the old goods and what was realized from the sale of the new ; so that upon a statement of the account between the parties of all their transactions, there would be no credit balance in favor of Robinson, Sr.

The theory presented by the allegations of the complaint, that

the former relations between the parties were changed, and that with respect to the new goods Robinson entered into the employ of the defendants, is not sustained by the evidence, and is inconsistent with the prior dealings between the parties.

Upon examining the record, therefore, we are of opinion that the cause of action, as stated in the complaint, was not made out, and that the referee was justified for the reasons given in his able opinion in dismissing the complaint, and that his conclusion should not be disturbed, but that the judgment entered upon his decision should be affirmed, with costs.

FOLLETT and PARKER, JJ., concurred.

Judgment affirmed, with costs.